### In re Michael J. KRUEGER, Debtor–Appellant.

#### No. 99–1221.

United States Court of Appeals, Seventh Circuit.

Argued May 17, 1999.

Decided Sept. 24, 1999.

Richard A. Bowers, Rock Island, IL, Pro Se.

Steven L. Nelson (argued), Anderson & Nelson, Rock Island, IL, for Appellee.

Barry M. Barash (argued), Barash & Stoerzbach, Galesburg, IL, for Debtor–Appellant.

Before EASTERBROOK, RIPPLE and EVANS, Circuit Judges.

RIPPLE, Circuit Judge.

When Michael J. Krueger filed bankruptcy under Chapter 13 of the Bankruptcy Code, his plan proposed that First National Bank ("the Bank") release its second mortgage on Mr. Krueger's residence. The Bank objected to confirmation of the plan. The bankruptcy court sustained the Bank's objection and, on appeal, the district court affirmed the bankruptcy court's holding that the Bank was not required to release the mortgage. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 158(d). For the following reasons, we affirm the judgment of the district court.

I

## BACKGROUND

### A. Facts

The following facts in this case are not in dispute. In April 1993, Michael J. Krueger borrowed $35,000 from the Bank to finance the purchase of a saloon in Moline, Illinois, called "Gamblers." The Bank secured the loan with the bar's equipment, Mr. Krueger's automobile, and a second mortgage on his residence in Rock Island, Illinois.

The loan documents, which Mr. Krueger and his attorney reviewed, include a mortgage, a note and an addendum, all executed on April 17, 1993. The note requires that Mr. Krueger pay 59 installments of $560.00, to be paid on or before the 15th of each month, beginning June 15, 1993. It provides that Mr. Krueger is in default if he fails to pay, when due, any amount required by the note's terms, and that notice of non-payment is waived. The note also contains an acceleration clause: If Mr. Krueger is in default for failure to pay an installment when due, the Bank may, at its option, declare the balance of the loan due. Paragraph 11 of the mortgage contains a nonwaiver clause:

> Extension of the time for payment ... shall not operate to release the liability of the [debtor Mr. Krueger].... Any forbearance by [the Bank] in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

The source of the controversy in this case is the addendum appended to the note. Mr. Krueger suggested adding this provision, and the Bank agreed. It provided for an early release of the mortgage interest on Mr. Krueger's home:

> It is agreed by [the Bank] and Michael J. Krueger that the mortgage interest in [his] personal residence ... will be released by [the Bank] upon the following performance:

(1) The balance of the loan that this mortgage interest secures is paid below $26,000.

(2) All payments are paid on or before the due date and all terms and agreements of the loan contract are met as documented in the contract and security agreement.

In December 1993, Mr. Krueger was 14 days late on one $560.00 payment. The Bank accepted, without comment, the late payment. In September 1995, the balance he owed to the Bank dropped below $26,000. Mr. Krueger testified at a hearing that he asked a Bank employee, Theresa, twice about the release of the Bank's mortgage interest; in January 1996, Theresa first said that she would check on it and, in June 1996, after the second inquiry, that she was surprised he had received no notification and that she would bring it to the attention of the Bank officers. By March 1997, when the balance on the note had dropped below $18,500, Mr. Krueger again spoke with Theresa, who said she did not have any answers for him and referred him to Judy at the Bank's downtown location. However, Mr. Krueger testified, neither Judy nor anyone else contacted him. Mr. Krueger continued making payments until April 1997, when a windstorm blew the roof off his saloon and he closed the business.

In September 1997, Mr. Krueger filed his bankruptcy case under Chapter 13 of the Bankruptcy Code. His plan stated that he intended to return to the Bank the assets of Gamblers, on which the Bank had a valid security interest, in full satisfaction of the debt owed. The plan also proposed that the Bank release its second mortgage on Mr. Krueger's residence, pursuant to the terms of the addendum. The Bank objected to confirmation of the plan, contending that it violated 11 U.S.C. § 1325(a): The plan was not filed in good faith, was not feasible, and improperly required the Bank to release its mortgage when it was not legally required to do so. Following a hearing, the bankruptcy court sustained the Bank's objection and held that the Bank was not required to release the mortgage.

## B. Decision of the Bankruptcy Court

The issue before the bankruptcy court was whether the Bank was required to release the mortgage it held on Mr. Krueger's residence. At the hearing, Mr. Krueger contended that the plan did not have to be amended to pay the mortgage debt because the mortgage should have been released, pursuant to the terms of the addendum, once the balance of the mortgage debt dropped below $26,000. The Bank countered that it was not legally obligated to release the mortgage unless both conditions of the addendum were met, and one was not: Mr. Krueger had failed to make all the payments on or before their due dates, as required.

The bankruptcy court found that the addendum to the loan agreement was subject to two constructions, depending on whether the two conditions for release of the mortgage were conjunctive or disjunctive.[1] Following the rules of contract construction under Illinois law, the court determined that the addendum had meaning only if it was construed to require both conditions to exist before an early release would occur. Under that construction, the Bank would grant an early release if Mr. Krueger made timely payments *and* the balance dropped below $26,000.

---

1. The bankruptcy court noted that, because there is no "and" or "or" between the two conditions for release of the mortgage, the addendum is ambiguous and must be construed. The court weighed whether to construe the document against the drafter (the Bank) because it is subject to more than one construction, *see Epstein v. Yoder,* 72 Ill. App.3d 966, 29 Ill.Dec. 169, 391 N.E.2d 432, 437–38 (1979), or to construe the document to give meaning to all its provisions, *see La-Salle Nat'l Trust, N.A. v. ECM Motor Co.,* 76 F.3d 140, 144 (7th Cir.1996). The court determined that the addendum must require both terms; otherwise, the second condition would be meaningless.

The bankruptcy court then determined that Mr. Krueger simply failed to satisfy the specific contractual condition of timely payments—the condition precedent to early release. The court rejected Mr. Krueger's contention that his single late payment was *de minimis*; in fact, it found that "[a] fourteen day delay in payment cannot be considered de minimis." It also declined to accept Mr. Krueger's argument that strict compliance with contractual provisions can be waived by the Bank's conduct of accepting late payments. The court specifically found that the Bank was not required to notify the debtor of his default and that the Bank's actions were not inconsistent with requiring the debtor to make timely payments in order to obtain the release. Thus, the court concluded, no waiver occurred. Nor did the debtor establish estoppel: He did not show that he took any action to his detriment based on the Bank's accepting a late payment and remaining silent and not telling the debtor he was in default. Thus, the court held, the Bank was not required to release its mortgage and, therefore, Mr. Krueger's plan was not feasible.

## C. Decision of the District Court

The district court affirmed the holding of the bankruptcy court. It noted that the addendum, a customized rather than boilerplate provision, clearly and unambiguously required that *all* payments be paid on or before the due date. It concluded that Mr. Krueger failed to satisfy the timely payment requirement of the addendum and therefore could not obtain an early release of the mortgage. It also upheld the bankruptcy court's determination that the late payment was not *de minimis*.

The district court rejected Mr. Krueger's contention that the Bank's failure to notify him that his late payment would

result in the retention of the mortgage constituted a waiver. It stated: "Krueger does not explain how, in light of the express provision of Paragraph 11 [the nonwaiver clause], [the Bank's] mere inaction should constitute a waiver." R.6 at 7. The fact that the Bank accepted the late payment and chose not to accelerate repayment does not render ineffective the contract's express requirement of timely payments, the court found.

The district court also determined that the Bank was not estopped from demanding that the terms of the addendum be honored. Finally, it noted that Mr. Krueger failed to show that he took, or was lulled into, any action to his detriment based on the Bank's acceptance of his late payment.

## II

## DISCUSSION

■ We review de novo the conclusions of law of the bankruptcy court and the district court; however, we review the bankruptcy court's findings of fact under a clearly erroneous standard. *See In re Scott,* 172 F.3d 959, 966 (7th Cir.1999); *Matter of Chappell,* 984 F.2d 775, 779 (7th Cir.1993). To determine the nature of a debtor's interest in property, we look to state law; to determine whether that interest counts as property of the debtor's estate, we look to federal bankruptcy law. *See Fisher v. Apostolou,* 155 F.3d 876, 880 (7th Cir.1998).

Mr. Krueger filed his bankruptcy case under Chapter 13 of the Bankruptcy Code. His plan qualifies for confirmation under that chapter if it satisfies the requirements set forth in § 1325(a) of the Code. His treatment of a secured claim such as the Bank's is governed by subsection (a)(5).[2]

---

**2.** Section 1325(a)(5) of the Bankruptcy Code states:

   (a) Except as provided in subsection (b), the court shall confirm a plan if—
    . . .

(5) with respect to each allowed secured claim provided for by the plan—
   (A) the holder of such claim has accepted the plan;

"Under this provision, a plan's proposed treatment of secured claims can be confirmed if one of three conditions is satisfied: The secured creditor accepts the plan, *see* 11 U.S.C. § 1325(a)(5)(A); the debtor surrenders the property securing the claim to the creditor, *see* § 1325(a)(5)(C); or the debtor invokes the so-called 'cram down' power, *see* § 1325(a)(5)(B)." *Associates Commercial Corp. v. Rash,* 520 U.S. 953, 956–57, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997); *see also* Collier's on Bankruptcy ¶ 1325.06[1][c] (15th ed. rev.1999). In this case, Mr. Krueger's plan did not attempt to satisfy any of those alternatives. It proposed, instead, that the Bank release the second mortgage on the debtor's residence.

The key to whether the Bank must release the mortgage is found in the addendum. Mr. Krueger does not dispute that both requirements—that the loan balance be below $26,000 *and* that all payments be timely made—must be satisfied before the Bank is required to release its second mortgage. He also does not dispute that he made one payment 14 days late. Rather, Mr. Krueger contends that the Bank waived his default, which was *de minimis*, and should be estopped from requiring strict compliance with the addendum.

## A. Waiver

■ Mr. Krueger asserts that the Bank's acceptance of his late payment, together with its assurances that there was no problem with the loan, waived his default. By its actions, he claims, the Bank waived that condition of the addendum. It was therefore reasonable for Mr. Krueger to expect that, once the trigger amount (a balance under $26,000) was reached, the mortgage would be released.

> (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
> (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim

■ We cannot accept Mr. Krueger's contention. First, we note Mr. Krueger's admission that his December 1993 payment was late. He also acknowledged that, just as the bankruptcy court had construed it, the addendum that he himself sought to incorporate into the loan agreement required both timely payments and a balance of less than $26,000. *See Maywood Proviso State Bank v. York State Bank & Trust Co.,* 252 Ill.App.3d 164, 192 Ill.Dec. 123, 625 N.E.2d 83, 88 (1993) ("A court cannot revise a contract and give a litigant a better bargain than he himself made."). It is clear that Mr. Krueger failed to satisfy one of the two specific contractual conditions in the addendum. Each of the two requirements was a condition precedent to the Bank's obligation to release the mortgage. *See MXL Indus., Inc. v. Mulder,* 252 Ill.App.3d 18, 191 Ill. Dec. 124, 623 N.E.2d 369, 374 (1993) ("Illinois courts define a condition precedent as one ... which is to be performed by one party to an existing contract before the other party is obligated to perform."). In Illinois, courts generally demand strict compliance with the requirement that a condition precedent be satisfied. *See id.*

■ Under Illinois law, nevertheless, a contracting party may waive provisions beneficial to it or waive strict compliance by conduct or actions "indicating that strict compliance with a particular provision will not be required." *Barker v. Leonard,* 263 Ill.App.3d 661, 200 Ill.Dec. 507, 635 N.E.2d 846, 848 (1994); *see also City of Chicago v. Chicago Title & Trust Co.,* 205 Ill.App.3d 728, 150 Ill.Dec. 478, 563 N.E.2d 65, 70 (1990) (noting that a party accepting late payments may waive its right to timely payments unless it gives a definite and written notice of the intention to require strict compliance) (citing *Allabastro v. Wheaton Nat'l Bank,* 77 Ill.

> is not less than the allowed amount of such claim; or
> (C) the debtor surrenders the property securing such claim to such holder.
> 11 U.S.C. § 1325(a)(5).

App.3d 359, 32 Ill.Dec. 831, 395 N.E.2d 1212, 1217 (1979)). Whether a Bank's continued acceptance of past due payments, without a demand for more prompt payment, constitutes waiver of a contractual provision is a question of fact. *See Smith v. Sturgeon*, 35 Ill.App.3d 750, 342 N.E.2d 420, 421 (1976).

In *Ryder v. Bank of Hickory Hills*, 146 Ill.2d 98, 165 Ill.Dec. 650, 585 N.E.2d 46 (1991), a case considering whether a bank waived its rights to accelerate the plaintiffs' loans because of the bank's cooperative conduct with the plaintiffs, the Supreme Court of Illinois set forth the state's law of waiver:

> Waiver is defined as the intentional relinquishment of a known right. Waiver may be made by an express agreement or it may be implied from the conduct of the party who is alleged to have waived a right. . . .
>
> Since the plaintiffs are claiming waiver, they had the burden of proving at trial that the Bank knew of its acceleration rights, and those facts which evidenced an intention by the Bank to waive such rights. Implied waiver of a legal right must be proved by a clear, unequivocal, and decisive act of the party who is alleged to have committed waiver. "An implied waiver may arise where a person against whom the waiver is asserted has pursued such a course of conduct as to sufficiently evidence an intention to waive a right or where his conduct is inconsistent with any other intention than to waive it." Whether the Bank waived its acceleration rights is a question of fact and "[i]t is axiomatic that this court will not disturb a trial court's finding unless that finding is contrary to the manifest weight of the evidence."

*Id.* 585 N.E.2d at 49 (internal citations omitted).

Following the state supreme court's guidance in *Ryder*, therefore, we consider whether Mr. Krueger met his burden of demonstrating that the Bank's course of conduct constituted sufficient evidence of an intent to waive its rights under the addendum. After reviewing the record in this case, we conclude that the bankruptcy court, which conducted a hearing on the issue, was correct in holding that the Bank did not waive its right to timely payments. Mr. Krueger's argument is based on his three sporadic conversations with Theresa, a loan officer, concerning release of his mortgage once he had paid below $26,000. At one point, Theresa said she would bring it to the attention of the Bank officers, but nothing happened. Mr. Krueger admits that these were his only contacts with the Bank concerning release of his mortgage. When asked why he did not pursue the release more actively, Mr. Krueger testified:

> Again, the business wasn't going well but the business was surviving. My intentions were to make all my payments on time. Quite honestly, in my mind I didn't realize I had to push the issue. I thought I had a contract that I thought they had to abide by it. I didn't realize I had to push the issue.

Bankr.R.6 at 55. Mr. Krueger also testified that he received a letter from the Bank's attorney, on July 14, 1997, that he was in default of his loan. However, he stated, "I had no idea that that had any relevance—I mean, any relation to the—to my residence." *Id.* at 56. He first learned that the Bank would not release the mortgage after he filed bankruptcy, he testified, at the first meeting of creditors. *Id.* at 55–56.

Mr. Krueger's testimony demonstrates only that a Bank employee accepted his payments and knew that the balance of his loan was below $26,000. No evidence was offered to indicate that the employee accepted the payments knowing the circumstances surrounding the Bank's loan agreement, with its addendum, and that she accepted the payments with the intention of waiving the Bank's right not to release the second mortgage. *See Ryder*, 165 Ill.Dec. 650, 585 N.E.2d at 50 (noting

that there was no evidence that the bank employee accepted plaintiffs' payments knowing the bank's right to accelerate and intending to waive that right; holding that plaintiffs' waiver claim thus was not supported by the evidence). Indeed, the record contains no evidence of any action by the Bank that was inconsistent with requiring the debtor to make all of his payments on time as a precondition for the release.

The note and the addendum require timely payment. In addition, the mortgage's nonwaiver clause at paragraph 11 expressly provides that the Bank has waived nothing by declining to exercise a right or remedy it may have.[3] In light of paragraph 11's explicit statement that an extension of time for payment "shall not operate to release the liability of" the debtor, the Bank's acceptance of one late payment cannot be construed as a waiver of the timely payments requirement. We hold that the bankruptcy court did not err in determining, as a finding of fact, that no waiver occurred. As a result, we conclude that the Bank was not required, under the terms of the addendum, to release its mortgage.

## B. Estoppel

■ Mr. Krueger insists that he relied on the assurances made by a Bank loan officer that there was no problem with his loan. For that reason, he claims, the Bank is now estopped from requiring strict compliance with the loan addendum. Mr. Krueger claims that the Bank should have told him that he had forfeited his right to an early release by paying 14 days late. Because the Bank did not notify him, he claims he was misled into passively continuing his payments rather than choosing to sue the Bank or to refinance his loan elsewhere.

■ Under Illinois law, "[t]he test used to evaluate an estoppel claim is whether, considering all the circumstances of the specific case, conscience and honest dealing require that a party be estopped." *Hubble v. O'Connor*, 291 Ill.App.3d 974, 225 Ill.Dec. 825, 684 N.E.2d 816, 823 (1997). In *Hubble*, the state appellate court set forth the elements a plaintiff is required to show in order to make out an estoppel claim:

(1) voluntary words or conduct by the estopped party amounting to a misrepresentation or concealment of material facts; (2) actual or implied knowledge of the estopped party that the representations were not true; (3) lack of knowledge of the true facts by the innocent party both at time made or at time acted

**3.** Mr. Krueger relies on *Saverslak v. Davis–Cleaver Produce Co.*, 606 F.2d 208, 213 (7th Cir.1979), *cert. denied*, 444 U.S. 1078, 100 S.Ct. 1029, 62 L.Ed.2d 762 (1980), which determined that the continued silent acceptance of benefits may lull someone into false assurance that strict compliance with contractual duty is not required. Under *Saverslak*, waiver occurs when an obligor manifests an intent not to require an obligee to comply strictly with a contractual duty.

Mr. Krueger's reliance on *Saverslak* is misplaced because he has confused the breaching and non-breaching parties. *Saverslak* states that "[a]nalysis of the applicability of waiver focuses on the intent of the non-breaching party. If he has intentionally relinquished a known right ... he has waived it and may not thereafter seek judicial enforcement." *Id.* at 213. In that case, plaintiff Saverslak was the non-breaching party. He knew that the defendant company had intentionally breached

a provision in its licensing agreement, but did not protest or acknowledge the breach until he commenced litigation seven years later. *See* 606 F.2d at 211. The court held that Saverslak, by intentionally relinquishing his right to challenge the breach for seven years, waived his right to recover damages for that breach. *See id.* at 214.

In this case, in contrast, plaintiff Mr. Krueger is the breaching party; he breached a provision of the addendum. The Bank, the non-breaching party, did nothing; like Saverslak, it neither protested nor acknowledged the breach. However, the Bank is not the party that sought judicial enforcement in this case. Rather, Mr. Krueger filed bankruptcy and sought the Bank's release of his mortgage, based on his fulfillment of one prong of the addendum—despite his breach of the addendum's other prong. Clearly, *Saverslak* does not support Mr. Krueger's position.

upon; (4) intent, or a reasonable expectation, on the part of the estopped party that the innocent party would act on the misrepresentations; (5) a reasonable, good-faith, detrimental change of position by the innocent party based on the misrepresentations; and (6) prejudice to the innocent party. *Id.* 684 N.E.2d at 825. In this case, the Illinois Appellate Court stated that a plaintiff relying on estoppel "must show that he was led to detrimentally rely upon the conduct or statements of the defendant and that such reliance was in good faith." *Id.* (citation, internal quotation marks omitted). The bankruptcy court found that Mr. Krueger failed to show that "he took any action to his detriment based on the BANK's accepting a late payment and remaining silent and not telling the DEBTOR he was in default." Bankr.R.11 at 6.

The bankruptcy court's finding was not clearly erroneous. Mr. Krueger continued to make his monthly payments, which was not to his detriment. He knew that he had made an untimely payment and that the note and the addendum required all payments to be paid on or before the due date. Yet he did not pursue a remedy with a Bank officer with decision-making power. "It is established that '[a] party claiming the benefit of an estoppel cannot shut his eyes to obvious facts, or neglect to seek information that is easily accessible, and then charge his ignorance to others.'" *Hubble,* 684 N.E.2d at 825–26 (quoting *Vaughn v. Speaker,* 126 Ill.2d 150, 127 Ill.Dec. 803, 533 N.E.2d 885, 893 (1988) (Ryan, J., specially concurring), *cert. denied,* 492 U.S. 907, 109 S.Ct. 3218, 106 L.Ed.2d 568 (1989)). In this case, the record does not establish the elements of estoppel. We hold that the bankruptcy court did not err in concluding that the Bank is not estopped from refusing to release the second mortgage.

## C. Materiality

Mr. Krueger contends that the bankruptcy court erred in concluding that one 14–day late payment is not a *de minimis* breach of the loan addendum. He challenges the ruling of the district court, which upheld that determination and also noted that Mr. Krueger did not explain why the payment was late.[4] Mr. Krueger insists he made all other payments on a timely basis; therefore, he asserts, the evidence supports the conclusion that the one untimely payment was a *de minimis* rather than a material breach. He urges us to find that the 14–day delay was not material.

In Illinois, the Restatement of Contracts forms the basis for the state's contract law and, in particular, the law defining whether a breach is material or *de minimis.* For example, the Supreme Court of Illinois, in *Eager v. Berke,* 11 Ill.2d 50, 142 N.E.2d 36 (1957), followed two sections of the Restatement when holding that the defendant was justified in refusing to accept the plaintiff's tender of payment 6 days after it was due. The court relied first on section 397, which establishes that a "breach or non-performance of a promise by one party to a bilateral contract, so material as to justify a refusal of the other party to perform a contractual duty, discharges that duty." *Id.* at 39. It also relied on section 274 of the Restatement, which provides:

> In promises for an agreed exchange, any *material failure* of performance by one party not justified by the conduct of the other discharges the latter's duty to give the agreed exchange even though his promise is not in terms conditional. An *immaterial failure* does not operate as such a discharge.

*Id.* (emphasis added).[5] Illinois courts also recognize the doctrine of *de minimis non*

4. Mr. Krueger did testify, at the bankruptcy court hearing, that the payment was late because he had left town over Christmas and his bartender failed to make the payment. The record does not reflect whether he ever notified the Bank of the reason.

5. The Supreme Court of Illinois, in *Eager,* · followed the principles set forth in the Re-

*curat lex,* "which means that courts will not regard trifles." *Pacini v. Regopoulos,* 281 Ill.App.3d 274, 216 Ill.Dec. 433, 665 N.E.2d 493, 497 (1996). As that state appellate court explained, courts generally require strict compliance with contractual terms, and the failure to perform any term of a contract is a breach of contract. However, the nonperforming party is liable for damages resulting only from a *material* breach. *Id.* (holding that, because a 94.9953% occupancy rate was essentially a 95% occupancy rate, the difference was *de minimis* and there was no breach).

■■■ Parties to a contract may make timely performance a material element of the contract. *See Janssen Bros., Inc. v. Northbrook Trust & Savings Bank,* 12 Ill. App.3d 840, 299 N.E.2d 431, 434 (1973). In this case, timely payment was one of the two conditions precedent to the addendum. Mr. Krueger's obligation to make timely payments was therefore a material part of the agreed exchange. Notably, there was no routine acceptance of untimely payments by the Bank (as there was in *Sahadi,* the case on which Mr. Krueger relies).[6] However, in one payment he was two weeks late. The bankruptcy court determined that a payment 14 days late is a material rather than immaterial, insignificant, *de minimis* breach. We hold, as did the district court, that Mr. Krueger's failure to meet the condition in the addendum that "*all* payments" be made "on or before

the due date" was a material breach of the addendum and was not *de minimis.*

## Conclusion

For the foregoing reasons, we affirm the judgment of the district court which affirmed the order of the bankruptcy court allowing the Bank's objection to confirmation of Mr. Krueger's Chapter 13 plan.

AFFIRMED

---

statement (First) of Contracts. Later Illinois cases have followed corresponding sections set forth in the Restatement (Second) of Contracts. *See, e.g., Circle Sec. Agency, Inc. v. Ross,* 107 Ill.App.3d 195, 63 Ill.Dec. 18, 437 N.E.2d 667, 672 (1982) (stating that appellee's remedies would depend on whether the breach of contract, if found, would be material or minor, citing Restatement (First) of Contracts § 275 (1932) and to Restatement (Second) of Contracts § 241 (1981), which provides guidelines for determining whether a breach is material or minor).

6. Mr. Krueger relies on *Sahadi v. Continental Ill. Nat'l Bank & Trust Co.,* 706 F.2d 193 (7th Cir.1983), which reversed a summary judgment as "an inappropriate short-cut in resolving the necessarily fact-bound, complex ques-

tion of 'material' breach." *Id.* at 200. In that case, the court found that "the prejudice to the Bank's rights stemming from a payment delay of several hours was *de minimis,*" *id.* at 197, and noted that the bank routinely had accepted late payments and knew there were sufficient funds in the bank to cover the interest requirement. It held there was a genuine issue of triable fact whether the promise to pay timely was materially defeated by the several-hours delay in payment. *Id.* In Mr. Krueger's case, the bankruptcy court held a hearing on the issue and determined, on the facts, that a 14-day delay in payment was not *de minimis.* Therefore, the disposition in this case is in no way inconsistent with the holding in *Sahadi.*