# United States Court of Appeals

## For the Seventh Circuit

———————

No. 18-3695

RICARDO H. ABELLAN, Trustee
of the Abellan Family Trust,

*Plaintiff-Appellee,*

*v.*

LAVELO PROPERTY MANAGEMENT, LLC,

*Defendant-Appellant.*

———————

Appeal from the United States District Court for the
Central District of Illinois.
No. 1:16-cv-01037-MMM-JEH — **Michael M. Mihm**, *Judge*.

———————

ARGUED SEPTEMBER 4, 2019 — DECIDED JANUARY 24, 2020

———————

Before WOOD, *Chief Judge*, and BAUER and HAMILTON, *Circuit Judges*.

HAMILTON, *Circuit Judge*. A New York owner of a fast-food property in Illinois, which was rented by an Arizona tenant, sold the property to buyers in California. Just after the sale, however, the tenant declared bankruptcy and never paid a nickel in rent to its new landlord.

This lawsuit followed. A jury found the purchase agreement rescindable for mutual mistake and the sellers liable for fraud and breach of contract. The buyer, plaintiff-appellee Ricardo Abellan, as trustee of a family trust, took his remedy in damages for a judgment of more than $2 million against defendant-appellant Lavelo Property Management, LLC. "It takes a lot to set aside a jury verdict," *Valdivia v. Twp. High School Dist. 214*, 942 F.3d 395, 396 (7th Cir. 2019), and this appeal by Lavelo falls well short. We affirm.

I.  *Factual and Procedural Background*

We state the facts in the light most favorable to the jury's verdict. In March 2015, Abellan and his wife Trini, of California, as trustees of their family trust, wanted to buy a commercial rental property with a "triple-net" lease, meaning the tenant would be responsible for paying property taxes, insurance, and maintenance costs in addition to rent. In their retirement, the Abellans' "ideal" was to "just sit" while their tenant would send rent checks.

On the other side of the country in New York, defendant Leonid Chernoy was trying to offload a fast-food property he owned in Le Roy, a small town in central Illinois. Chernoy was the managing member of defendant Lavelo Property Management, a limited liability company formed as an investment vehicle for his family and its trusts. Lavelo in turn was the sole member of defendant HRDS Le Roy IL, a limited liability company formed for the single purpose of holding the Le Roy property. (We focus on Lavelo here because it was a party to the purchase agreement described below and the only defendant against which judgment was entered.)

HRDS had purchased the property from JC123 Holdings, a limited liability company owned by Jason and Carl LeVecke of Arizona (grandsons of Carl Karcher, founder of the Carl's Jr. chain of fast-food restaurants), under a sale-leaseback arrangement. That means JC123 sold the property to HRDS and HRDS then leased it back to the LeVeckes, specifically to a limited liability company called MIH Star HD, whose managing member was Jason LeVecke.

In April 2013 the LeVeckes purchased the Le Roy property, formerly the site of a restaurant but vacant at the time, for $325,000. Three months later, in July 2013, they sold the still-vacant property to HRDS for $1,100,000. HRDS and MIH Star then executed a twenty-year, triple-net lease of the property, beginning July 2013, "for the operation" by MIH Star of either a Carl's Jr. or a Hardee's restaurant (another fast-food chain owned by the same corporate parent). Chernoy understood the LeVeckes would require up to a year to remodel, or in the parlance of commercial real estate, "re-image" the vacant property as a Carl's Jr. or a Hardee's.

The re-imaging did not proceed on schedule. At the end of August 2013, Jason LeVecke told Chernoy the property would be open for business by the end of the year. It was not. Chernoy was later told the property would open in May 2014. It did not. A local contractor hired by the LeVeckes began gutting the property in May 2014 but was ordered to stop in June and filed a nearly $50,000 mechanic's lien against the property in August. Chernoy received notice of the lien in late August. In early September 2014, he decided to sell the property, still vacant and now gutted.

On September 6, 2014, Jason LeVecke told Chernoy the property would open in sixty days. On September 23, it was

going to be the end of the year. On October 15, it was "December/January." On December 15, it was "I will get back to you." On January 7, 2015 it was "I … will update you soon." On January 27, it was going to be the end of April. On April 6, it was June. On May 20, having come full circle, it was again sixty days.

On June 9, 2015, plaintiff Abellan bought the property from HRDS. As noted above, Lavelo was also party to the purchase agreement. The purchase agreement provided for a price of $1.55 million for the property, assignment of the LeVeckes' lease, and their personal guaranties of the lease obligations. But the LeVeckes never paid any rent to Abellan, and they, along with most of their companies, declared bankruptcy soon after Abellan bought the property. MIH Star did not declare bankruptcy but simply "ceased to exist." HRDS was dissolved on July 10, 2015. Abellan was left holding a vacant and gutted property, assessed for tax purposes at $321,000, with outstanding property tax bills and, most important, with no tenant and no solvent guarantor of the lease.

Abellan filed this lawsuit in the Central District of Illinois under the district court's diversity jurisdiction. See 28 U.S.C. § 1332. The case was tried against defendants HRDS, Lavelo, and Chernoy on Abellan's claims for mutual mistake, fraud, and breach of contract. The jury returned a verdict in Abellan's favor on each claim, though it awarded no damages for fraud and the judge denied rescission as a matter of equity. After the court decided post-trial motions from both sides, the final judgment ordered Lavelo to pay Abellan $1,289,341.72 in damages for breach of contract, $164,079.98 in prejudgment interest, $627,702.15 in attorney fees, and $29,061.28 in costs.

Lavelo is the only appellant. We have jurisdiction under 28 U.S.C. § 1291.

II. *Analysis*

Lavelo appeals the denial of its motions for judgment as a matter of law, for a new trial, and for amendment of the judgment, as well as the awards of prejudgment interest and attorney fees. We address each challenge in turn. The parties agree, with only one exception discussed below, that Illinois substantive law applies, so we apply Illinois law. *Wood v. Mid-Valley Inc.*, 942 F.2d 425, 427 (7th Cir. 1991).

A. *Judgment as a Matter of Law*

Abellan asserted that the sellers breached the parties' purchase agreement in two ways: first by falsely warranting that MIH Star was not in default of the lease while knowing that MIH had not "continuously operated" its business as the lease required; and second by failing to deliver to Abellan certain notices received from MIH Star that related to the lease. Lavelo maintains that after all the evidence was in, it could not as a matter of law be held liable for breaching either the no-default warranty or the notice-delivery provision contained in the purchase agreement.

We review *de novo* a district court's denial of a motion under Federal Rule of Civil Procedure 50(b) for judgment as a matter of law, affirming if any reasonable jury could have found for the non-movant. *Wallace v. McGlothan*, 606 F.3d 410, 418 (7th Cir. 2010), citing *Tammi v. Porsche Cars North America, Inc.*, 536 F.3d 702, 707 (7th Cir. 2008). Because a post-verdict Rule 50(b) motion is "only a renewal" of a pre-verdict Rule 50(a) motion, a Rule 50(b) motion may be granted "only on grounds advanced in the preverdict motion." *Id.*, quoting Fed.

R. Civ. P. 50(b) advisory committee's note to 2006 amendment.

Though a non-movant may waive or forfeit these requirements, *id.* at 419, citing *Collins v. Illinois*, 830 F.2d 692, 698 (7th Cir. 1987), Abellan insisted on their observance in the district court and the court observed them scrupulously. Accordingly, as did the district court, we limit our review to the grounds for judgment advanced by Lavelo in its Rule 50(a) motion. We limit our review further, as did the district court, to Lavelo's arguments on the no-default warranty, as a general verdict in a civil case may be affirmed on any legally sufficient theory submitted to the jury. *Kossman v. Northeast Ill. Reg'l Commuter R.R. Corp.*, 211 F.3d 1031, 1037 (7th Cir. 2000); *Freislinger v. Emro Propane Co.*, 99 F.3d 1412, 1418 (7th Cir. 1996); *Culli v. Marathon Petroleum Co.*, 862 F.2d 119, 123 (7th Cir. 1988).

The purchase agreement contained a no-default warranty. The sellers warranted to buyer Abellan that there was "no default by Seller, or to Seller's knowledge, by MIH Star HD, LLC under the Lease." A critical provision of the lease required the tenant to operate its restaurant business continuously. The lease provided that it would constitute an "Event of Default":

> If Tenant fails to continuously operate its business within the Premises except for temporary periods of closure caused by casualty, or temporary and reasonable periods of remodeling, not to exceed ninety (90) days in any Lease Year without first obtaining Landlord's written approval which approval shall not be unreasonably withheld, so long as Tenant is diligently pursuing re-opening of the Premises.

Lavelo has preserved two arguments why it should not be held liable for breach of the no-default warranty by MIH Star's (the LeVeckes') default of the continuous-operations provision. First, Lavelo's Chernoy testified that he understood the continuous-operations provision to lie dormant until a restaurant began to operate on the property but none ever did. If that had been his understanding, then the warranty of no default "to Seller's knowledge" arguably would not have been breached. Second, even if MIH Star breached the continuous-operations provision by failing ever to operate a restaurant under the lease, Lavelo contends that it and HRDS acquiesced in and waived the default. Lavelo thus argues that the warranty of "no default" was not breached. Neither argument is persuasive.

### 1. *Knowledge of Default?*

We begin with the axiomatic. As everyone is presumed to know the law, *Lyon Fin. Servs., Inc. v. Illinois Paper and Copier Co.*, 732 F.3d 755, 765 (7th Cir. 2013), so Chernoy is presumed to know the meaning of the contracts he executed. *Paper Express, Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992). Put differently, everyone is presumed to know that contracts, like laws, will be judicially interpreted, and must bear the risk of adverse interpretation. That goes double for warrantors of legal compliance. See, e.g., *Pantry, Inc. v. Stop-N-Go Foods, Inc.*, 796 F. Supp. 1171, 1172, 1175–80 (S.D. Ind. 1992) (Tinder, J.) (interpreting statute to determine that warranty of compliance with environmental laws "to the best of Seller's knowledge" was breached), order vacated on other grounds, 934 F. Supp. 295 (1994). Lavelo's novel qualified-immunity-style defense that the meaning of the lease was not clearly established at the time of the warranty thus cannot

avoid liability for breach of the warranty any more than if Chernoy were blind or illiterate, or if the contracts were in German. *Paper Express*, 972 F.2d at 757.

Still, Chernoy's understanding of the lease became relevant at trial. There is no doubt that Chernoy knew that MIH Star had "failed to continuously operate its business" for a period "exceeding ninety days" "without first obtaining," or even seeking, "Landlord's written approval." That might be the end of the matter. Not so, argues Lavelo, because the continuous-operation provision also referred to the tenant's "diligently pursuing re-opening of the Premises," and as Chernoy testified and Lavelo argues here, "in order for something to re-open, it would first have to open." That's true enough, but it does not help Lavelo if the lease otherwise required an open and operating restaurant on the property at any time more than ninety days before Chernoy warranted "no default" to Abellan in June 2015.

Chernoy maintained at trial that he understood the lease to contain no such requirement at its inception in July 2013. He testified that, "if we were to interpret this the way the plaintiff wants to interpret it, then as of day one, the tenant would already be in default" for failing to operate. That could not be right, according to Chernoy, because he and Jason LeVecke "both knew that they were going to take from 9 months to 12 months to do their remodeling, re-imaging, whatever they call it." "That was the exact agreement with the LeVeckes," Chernoy insisted, that the property "would be remodeled and be operating [a] restaurant[] from 9 to 12 months after [they] closed on [it]." "I don't have it in writing," he conceded, "but that's what we discussed."

Ordinarily, parties to an integrated written contract cannot vary or supplement its terms with evidence of other purported terms extrinsic to the writing. *Air Safety, Inc. v. Teachers Realty Corp.*, 706 N.E.2d 882, 884–85 (Ill. 1999). But extrinsic evidence may illuminate an ambiguous writing, *id.* at 884, or one that is silent on a material term. *Barnes v. Michalski*, 925 N.E.2d 323, 336 (Ill. App. 2010); Restatement (Second) of Contracts § 204 cmt. e (Am. Law Inst. 1981). The court determines whether such extrinsic evidence should be received, and the jury determines its import. *Fidelity and Deposit Co. of Md. v. Rotec Indus., Inc.*, 392 F.3d 944, 949 (7th Cir. 2004); *Air Safety*, 706 N.E.2d at 884.

Without objection, the jury in this case was never told by the district court what the writings in suit meant as a matter of law. Instead, the jury received only the unvarnished contractual language, and both sides repeatedly invited the jury to interpret the purchase agreement and the lease. We take that as a tacit agreement among the district judge and the parties that the matter required fact-finding. On appeal, Lavelo will not, therefore, be heard to argue from the "unambiguous" language of these writings here, and that tacit agreement distinguishes this case from *Dual Mfg. & Eng'g, Inc. v. Burris Indus., Inc.*, 619 F.2d 660, 661–63 (7th Cir. 1980) (en banc), where we held that appellants had preserved for review a question of law (patent obviousness) where the trial court erroneously submitted it to the jury as question of fact; appellants' tender and approval of jury instructions after the trial court made its intentions clear did not waive the legal issue.

In any event, this framing of the issues for trial was reasonable, and we are confident it did not unfairly prejudice the defendants. Read as a whole, see *Dowling v. Chicago Options*

*Assocs., Inc.*, 875 N.E.2d 1012, 1023 (Ill. 2007), the lease in numerous provisions contemplated that a restaurant would eventually operate on the property but was ambiguous or silent as to when it would start. When a contract does not specify a deadline for performance, a reasonable time will be implied. *Bowens v. Quinn*, 561 F.3d 671, 675 (7th Cir. 2009), citing among others *Rose v. Mavrakis*, 799 N.E.2d 469, 475 (Ill. App. 2003), and Restatement (Second) of Contracts § 204 cmt. d. The trier of fact may determine what is reasonable based on the evidence. *Barnes*, 925 N.E.2d at 336 (plaintiff "testified he told defendant she could begin paying him back when she got on top of her debts").

Chernoy's "9 to 12 month" testimony thus put the defense between Scylla and Charybdis. If the jury found that Chernoy and the LeVeckes intended restaurant operations to begin at the property at the lease's inception, then Chernoy knew MIH Star was in default of the continuous-operation provision on day 91 of the lease term. If, on the other hand, the jury credited Chernoy's "9 to 12 month" testimony, then he knew MIH Star was in default of the continuous-operation provision on day 91 of the lease term plus one year, or from October 2014 on—still eight months before Lavelo, HRDS, and Chernoy gave Abellan the no-default warranty upon the purchase in June 2015. Either way, the jury had sufficient evidence to find breach of the no-default warranty "to Seller's knowledge." The district court did not err in refusing to disturb its finding.

### 2. *Waiver of Default?*

Lavelo argues in the alternative that, even if MIH Star was in default of the lease for failing to operate continuously, HRDS had waived the default by accepting MIH Star's rent payments. See *In re Krueger*, 192 F.3d 733, 738–39 (7th Cir.

1999), citing among others *Barker v. Leonard*, 635 N.E.2d 846, 848 (Ill. App. 1994). On that theory, there was no breach of the lease and the no-default warranty to buyer Abellan was not breached. The district court, distinguishing a case cited by Lavelo, *Midland Management Co. v. Helgason*, 630 N.E.2d 836 (Ill. 1994), held that Lavelo's waiver theory was "inapposite" and "misapplied" here because HRDS "did not attempt to terminate its lease Agreement" with MIH Star "due to the tenant's breach." We agree.

In a contractual setting like this, "Waiver is defined as the intentional relinquishment of a known right," *Krueger*, 192 F.3d at 739, quoting *Ryder v. Bank of Hickory Hills*, 585 N.E.2d 46, 49 (Ill. 1991), not as the undoing of what gave rise to the right that was relinquished. Waiver excuses, not erases, an admitted breach by the legal, not metaphysical, effect of defeating a remedy for it. See *Krueger*, 192 F.3d at 740; *Midland Mgmt.*, 630 N.E.2d at 839. This can be seen, among other ways, from the fact that waiver is an affirmative rather than a negative defense; it admits the alleged breach but can defeat a remedy. See Fed. R. Civ. P. 8(c)(1); *Hahn v. County of Kane*, 991 N.E.2d 373, 378 (Ill. App. 2013). A defense of waiver is a plea of confession and avoidance that deprives "the admitted facts of an adverse legal effect." *Confession and Avoidance*, *Black's Law Dictionary* (11th ed. 2019); see also, e.g., *Reed v. Columbia St. Mary's Hospital*, 915 F.3d 473, 477 n.1 (7th Cir. 2019).

More practically, in a deal like this one, where the lease and its guaranties were vital elements of the sale, the sellers' no-default warranty to the buyer must be interpreted from the perspective of a reasonable person in the buyer's position. See *Newman v. Metro. Life Ins. Co.*, 885 F.3d 992, 998 (7th Cir. 2018), citing *Gillen v. State Farm Mut. Auto. Ins. Co.*, 830 N.E.2d 575,

582 (Ill. 2005). The no-default warranty would have been worthless if it meant only that the seller-lessor had chosen not to enforce its rights against a breaching tenant. What matters to a buyer who receives such a warranty is what he actually receives: here, whether Abellan was buying a lessor's rights vis-à-vis a tenant who had performed and was continuing to perform under the lease. Chernoy (on behalf of sellers HRDS and Lavelo) had shown remarkable tolerance for heel-dragging and evasion by the LeVeckes. That was his and their right as a landlord, but his tolerance was not and could not be the reasonable measure of the sellers' warranty in the sale to Abellan. The district court correctly denied Lavelo's motion for judgment as a matter of law.

B. *New Trial*

We review denial of a motion for a new trial under Federal Rule of Civil Procedure 59(a) for abuse of the district court's discretion. *Pickett v. Sheridan Health Care Ctr.*, 610 F.3d 434, 440 (7th Cir. 2010). "[W]e reverse only if 'the verdict is against the weight of the evidence, the damages are excessive, or if for other reasons the trial was not fair to the moving party.'" *Id.*, quoting *Emmel v. Coca-Cola Bottling Co.*, 95 F.3d 627, 636 (7th Cir. 1996).

In this case, Lavelo framed its motion for a new trial so that the district court believed it sought a ruling only if the court first granted its Rule 50(b) motion. See Fed. R. Civ. P. 50(c), not cited by Lavelo to the district court. With that understanding, because the court denied the Rule 50(b) motion, it denied the 59(a) motion as "moot." If that was not Lavelo's intent, it ought to have said so more clearly by way of a motion for reconsideration in the district court. In any event, the

court elsewhere addressed much of the substance of Lavelo's Rule 59(a) motion. We find no grounds for reversal.

### 1. *Enforcement of Final Pretrial Order*

Lavelo objected at trial to evidence relating to the purchase agreement's notice-delivery provision. A claim for breach of that provision, Lavelo argued, was not within the scope of the final pretrial order under Fed. R. Civ. P. 16(e). Enforcement or modification of a final pretrial order is within the district court's sound discretion. *Gorlikowski v. Tolbert*, 52 F.3d 1439, 1444 (7th Cir. 1995). "If reasonable persons could differ, no abuse of discretion can be found." *Id.*, quoting *Durr v. Intercounty Title Co. of Ill.*, 14 F.3d 1183, 1187 (7th Cir. 1994).

Reading the broad language of the operative complaint and the final pretrial order, a reasonable judge could conclude that Lavelo was on adequate notice of a claim for breach of the notice-delivery provision by Chernoy's failure to deliver to Abellan emails describing the LeVeckes' failure to pay real estate taxes on the property, which is a critical element of a triple-net lease. And any prejudice to Lavelo caused by late notice of the theory was minimal. The factual bases of the theory were not disputed, and Lavelo received and used fair opportunities to contest the meaning of the notice-delivery provision before both the judge and the jury. There was no abuse of discretion.

### 2. *Weight of the Evidence*

Lavelo contends the jury's findings on damages and reliance were contrary to the weight of the evidence. "A motion for a new trial can be granted when the district court—in its own assessment of the evidence presented—believes that the verdict went against [its] manifest weight." *Mejia v. Cook*

*County*, 650 F.3d 631, 634 (7th Cir. 2011). Lavelo did not properly preserve these issues as grounds for judgment as a matter of law, but it did present them properly as grounds for a new trial. The district court addressed the damages issue under the JMOL rubric but did not have a prior opportunity to address reliance because Lavelo raised it neither in its Rule 50(a) motion nor, fatally as we explain, at the pretrial instructions conference.

The difference between the Rule 50(b) and Rule 59(a) standards, see *Mejia*, 650 F.3d at 634, citing *Smart Mktg. Grp. v. Publications Int'l Ltd.*, 624 F.3d 824, 832 (7th Cir. 2010), and the absence of an express application of the latter to these issues, do not warrant reversal in this case. Lavelo's arguments were almost purely legal and are defeated by clear-cut legal rules. They did not engage the district court's special power under Rule 59(a) "to get a general sense of the weight of the evidence, assessing the credibility of the witnesses and the comparative strength of the facts … ." *Id.* at 633. The judge clearly viewed the trial as having been fair to the defense and the verdict well-supported by the evidence. We agree with that assessment. We are convinced that remand for express application of Rule 59(a) would not produce a different outcome. Cf. *id.* at 635 ("Maybe … the district court would grant the motion for a new trial under the proper standard, and maybe not. The outcome in this case is not certain.").

### a. *Damages*

Abellan's damages for breach of contract totaled $1,289,341.72, which was the difference between his purchase price ($1,550,000) and the tax assessed value of the property in 2016 ($321,000), plus property taxes and related legal expenses paid following the LeVeckes' abandonment of the

lease ($60,341.72). Lavelo argues these damages were proxi-mately caused by the LeVeckes, not by the sellers' breach of the purchase agreement's no-default warranty. We are not persuaded. The purpose of the no-default warranty was to re-duce the risk to Abellan of just such breaches of the lease by the tenant.

"When a contract is breached, the injured party is entitled to be placed in the position he would have been in had the contract been performed." *Kirkpatrick v. Strosberg*, 894 N.E.2d 781, 792 (Ill. App. 2008), citing *Wilson v. DiCosola*, 815 N.E.2d 975, 978 (Ill. App. 2004). Recoverable damages are restricted to "those which were reasonably foreseeable and were within the contemplation of the parties at the time the contract was executed." *A. Kush & Assocs., Ltd. v. Am. States Ins. Co.*, 927 F.2d 929, 938 (7th Cir. 1991), quoting *Kalal v. Goldblatt Bros., Inc.*, 368 N.E.2d 671, 674 (Ill. App. 1977); see also *Wilson*, 815 N.E.2d at 978. Ordinarily in an action for breach of a real es-tate sales contract, damages are measured by "the difference between the fair market value of the real estate on the day of the breach and the sale price contracted for by the purchas-ers," *Kirkpatrick*, 894 N.E.2d at 792, citing *Lakshman v. Vec-chione*, 430 N.E.2d 199, 203 (Ill. App. 1981), "including reason-able costs and attorney's fees." *Lakshman*, 430 N.E.2d at 203.

In this case, setting aside costs and fees, the evidence showed that Abellan paid $1,550,000 for a property with a commercial tenant that was fulfilling its obligations under a twenty-year triple-net lease. He received a property worth $321,000 with a worthless lease—a loss of $1,229,000. It was not against the manifest weight of the evidence for the jury to conclude that, if the sellers had not falsely warranted that the tenant was not in default, Abellan would not have suffered

the loss. He would not have closed on the purchase without an open and operating, or at the very least, soon-to-be reopened and operating, tenant. The same goes for the jury's conclusion that the loss of the tenant's future performance under the lease was a "direct and natural result" of the sellers falsely warranting the tenant's past performance. Lavelo was not entitled to a new trial on this ground.

      b.  *Reasonable Reliance?*

Lavelo argues next it was contrary to the weight of the evidence for the jury to have found that Abellan reasonably relied on the purchase agreement's no-default warranty. The jury was never instructed that Abellan had to prove reasonable reliance to prove his breach of contract claim, so this argument asserts in effect an instructional error. The problem for Lavelo is that a party asserting instructional error as grounds for a new trial must first preserve the error by specific and timely objection. Fed. R. Civ. P. 51(c); *Schobert v. Illinois Dep't of Transp.*, 304 F.3d 725, 729–30 (7th Cir. 2002). Lavelo did not object to the instructions on this point, so its reliance arguments are waived.

Waiver notwithstanding, an instruction requiring reasonable reliance on the express warranty would have been incorrect as a matter of Illinois contract law. "The general rule … is that a party to a contract can enforce an express warranty even if he should believe or even does believe that the mishap warranted against will occur." *Vigortone AG Prods., Inc. v. PM AG Prods., Inc.*, 316 F.3d 641, 649 (7th Cir. 2002), citing among others *Indeck N. Am. Power Fund, L.P. v. Norweb plc*, 735 N.E.2d 649, 658–59 (Ill. App. 2000) (applying both Illinois and New York law), in turn citing among others *CBS, Inc. v. Ziff-Davis Publ'g Co.*, 553 N.E.2d 997, 1001 (N.Y. 1990). The warranty "is

intended precisely to relieve the promisee of any duty to ascertain the fact for himself." *Metropolitan Coal Co. v. Howard*, 155 F.2d 780, 784 (2d Cir. 1946) (L. Hand, J.), cited by *Vigortone*, 316 F.3d at 648, and *Ziff-Davis*, 553 N.E.2d at 1000.

As part of a "shift in perspective" in American law "from warranty as tort to warranty as contract," *Lyon Fin. Servs., Inc. v. Illinois Paper and Copier Co.*, 732 F.3d 755, 762 (7th Cir. 2013), Illinois courts began dispensing with reasonable reliance in actions for breach of express warranties and requiring only "actual reliance," *Regopoulos v. Waukegan P'ship*, 608 N.E.2d 457, 461 (Ill. App. 1992) (citing cases), which is shown by proof "that the warranty was part of the bargained-for agreement." *Lyon*, 732 F.3d at 762, citing among others *Ziff-Davis*, 553 N.E.2d at 1002 n.5. "The question of whether the promisee 're-lied' on the warranty, then, is whether he believed he was purchasing the promise." *Ainger v. Mich. Gen. Corp.*, 476 F. Supp. 1209, 1225 (S.D.N.Y. 1979), cited by *Ziff-Davis*, 553 N.E.2d at 1001.

The logical relevance of this "basis of the bargain" rule is limited "to the question of whether an express warranty has been *created*"; it is "not applicable to situations where the warranties are clear and express." *Wikoff v. Vanderveld*, 897 F.2d 232, 241 (7th Cir. 1990) (applying Illinois law). The warranty sued on here was part of the parties' agreement, so the plaintiff did not need to prove further reliance. To give a contrary instruction would have been error. Lavelo was also not entitled to a new trial on this ground.

C. *Second Amended Judgment*

Upon considering both sides' motions to alter or amend the judgment under Federal Rule of Civil Procedure 59(e) and

Abellan's motion for attorney fees under Rule 54(d) and his bill of costs, the district court entered a second amended judgment awarding damages, prejudgment interest, and attorney fees, and taxing costs. Lavelo challenges all but the costs. We review the grant or denial of a Rule 59(e) motion for abuse of the district court's discretion, *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995), and likewise the grant of a motion for attorney fees. *Gastineau v. Wright*, 592 F.3d 747, 748 (7th Cir. 2010). We find no legal error or abuse of discretion here.

### 1.  *Statutory Limitation of Liability?*

Both sellers in this case, HRDS and Lavelo, were limited liability companies formed under the laws of Wyoming. Lavelo asked the district court to amend the judgment against it so as to award no damages on the basis of a Wyoming statute, Wyo. Stat. § 17-29-704(d), which addresses claims against dissolved limited liability companies.

We bypass arguments about whether Lavelo forfeited this claim and whether the statute, which has not been the subject of reported decisions, applies to plaintiff's efforts to hold Lavelo liable for his claims against HRDS. Lavelo's liability in this case is not only derivative of HRDS's but also primary. Along with HRDS, Lavelo itself was a party to the purchase agreement with plaintiff and as a seller thus itself made the no-default warranty to plaintiff. Under Illinois contract law, where two parties make one promise under one contract through one agent to their counterparty, as the evidence shows here, their liability for breach is joint and several. *Pritchett v. Asbestos Claims Mgmt. Corp.*, 773 N.E.2d 1277, 1283 (Ill. App. 2002), citing 765 Ill. Comp. Stat. 1005/3 and *Brokerage Resources, Inc. v. Jordan*, 400 N.E.2d 77, 80 (Ill. App. 1980). In

other words, Lavelo was properly held liable for its own breach of the purchase agreement. Lavelo was not entitled to amendment of the judgment on the basis of the Wyoming statute.

2  *Prejudgment Interest*

By his Rule 59(e) motion, Abellan sought and obtained an award of prejudgment interest. The availability and amount of prejudgment interest are substantive for *Erie Railroad* purposes, so we look again to state law. *Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 106 F.3d 1388, 1405 (7th Cir. 1997). "Illinois law permits the recovery of prejudgment interest … if the amount is a fixed amount or easily computed. If any of these prerequisites are met, then the decision to allow statutory interest lies within the sound discretion of the district court." *Id.*, citing 815 Ill. Comp. Stat. 205/2 and *Bank of Chicago v. Park Nat'l Bank*, 640 N.E.2d 1288, 1296 (Ill. App. 1994).

Where damages are measured by the difference between contract price and market value, ordinarily "they are sufficiently ascertainable to justify an award of prejudgment interest." *Farwell Constr. Co. v. Ticktin*, 405 N.E.2d 1051, 1065 (Ill. App. 1980) (breach of warranty in real estate sales contract), citing *Keystone Steel & Wire Co. v. Price Iron & Steel Co.*, 103 N.E.2d 143, 148 (Ill. App. 1952). A claim for interest is not defeated by a need for legal ascertainment of damages, *id.*, citing *Martin v. Orvis Bros. & Co.*, 323 N.E.2d 73, 83 (Ill. App. 1974), nor by reasonable disputes between the parties as to liability, *id.*, citing *Martin*, 323 N.E.2d at 83, nor by the existence of a good-faith defense. *Santa's Best Craft, LLC v. St. Paul Fire and Marine Ins. Co.*, 611 F.3d 339, 355 (7th Cir. 2010); *First Nat'l Bank Co. of Clinton v. Ins. Co. of N. Am.*, 606 F.2d 760, 769 (7th Cir. 1979).

In this case, the contract price was indisputable and the market value as assessed by the county tax assessor was not contested and was a matter of public record. Compare *Farwell Constr.*, 405 N.E.2d at 1065 (denial of interest was not abuse of discretion where "contract price was sharply disputed" and market value "was also disputable"). The difference between the two values was the measure of Abellan's damages, as explained above. The damages were thus sufficiently ascertainable to support an interest award under Illinois law.

To avoid this conclusion, Lavelo cites *General Dynamics Corp. v. Zion State Bank & Trust Co.*, 427 N.E.2d 131, 140 (Ill. 1981), for the proposition that good faith disputes over liability preclude interest awards. That case, however, addressed a different statutory provision that applies to interest "on money withheld by an unreasonable and vexatious delay of payment." 427 N.E.2d at 133, quoting 815 Ill. Comp. Stat. 205/2, cl. 5. Under that statutory language, a good faith dispute about liability necessarily defeats a claim for interest. In this case, however, the court applied the statutory provision for interest on money due under an "instrument of writing" like the purchase agreement. 815 Ill. Comp. Stat. 205/2, cl. 1; see *Stone v. City of Arcola*, 536 N.E.2d 1329, 1341 (Ill. App. 1989) (distinguishing *General Dynamics* on this ground); *Farwell Constr.*, 405 N.E.2d at 1064 (real estate sales contract qualifies as "instrument of writing" under statute, so interest may be awarded if damages could be determined with sufficient precision).

Lavelo also contends that the district court erred in calculating interest from the date this lawsuit was filed rather than from the filing date of the fourth amended complaint, in which Abellan first alleged breach of contract. In fact, the

district court might have been justified in calculating interest from the even earlier date of the sale in June 2015, when the sellers breached the purchase agreement by falsely warranting the tenant was not in default. See 815 Ill. Comp. Stat. 205/2 (providing for interest on "all moneys after they become due"); *Santa's Best Craft*, 611 F.3d at 355 (interest begins to accrue when amount becomes "due and capable of exact computation"); *First Nat'l Bank*, 606 F.2d at 770 ("interest from the dates of the proofs of loss was properly awarded under Illinois law"). The district court did not err by awarding Abellan prejudgment interest.

### 3. *Attorney Fees*

By his Rule 54(d) motion, Abellan sought and obtained an award of attorney fees under the terms of the purchase agreement. We turn one final time to state law to assess the availability and amount of that award. *Taco Bell Corp. v. Continental Cas. Co.*, 388 F.3d 1069, 1077 (7th Cir. 2004). "Provisions in contracts for awards of attorney fees are an exception to the general rule that the unsuccessful litigant in a civil action is not responsible for the payment of the opponent's fees." *Kaiser v. MEPC Am. Props., Inc.*, 518 N.E.2d 424, 427 (Ill. App. 1987). Only a reasonable fee may be recovered, which means "reasonable charges for reasonable services." *Id.* In determining whether a fee is reasonable, in addition to hours expended and hourly rates charged, a court should consider the skill of the lawyers, the difficulty and importance of the case, usual charges for similar services, the benefit to the client, and "whether there is a reasonable connection between the fees and the amount involved in the litigation." *Id.* at 427–28.

The purchase agreement in this case provided: "In any litigation … which may arise between any of the parties hereto,

the prevailing party shall be entitled to recover … reasonable attorney's fees … ." "A party can be considered a 'prevailing party' for the purposes of awarding fees when he is successful on any significant issue in the action and achieves some benefit in bringing suit, receives a judgment in his favor or by obtaining an affirmative recovery." *Timan v. Ourada*, 972 N.E.2d 744, 752 (Ill. App. 2012), quoting *Grossinger Motorcorp, Inc. v. American Nat'l Bank & Tr. Co.*, 607 N.E.2d 1337, 1348 (Ill. App. 1992).

Three counts of the complaint were dismissed on the defendants' motions to dismiss and for summary judgment, but in the end, Abellan won favorable verdicts on each of the three counts submitted to the jury: mutual mistake, fraud by HRDS and by Chernoy personally, and breach of contract, with substantial damages awarded against Lavelo on the contract theory. This was success on significant issues in the case achieving meaningful relief. The district court did not abuse its discretion in finding Abellan was the prevailing party.

Lavelo points out that Abellan recovered damages on only one of his theories, and against only one of several defendants. Lavelo argued in the district court that either no fees should be awarded or that fees should be limited to less than 15 percent of the fees plaintiff actually incurred. On appeal, Lavelo suggests plaintiff be limited to about 25 percent of his fees.

The arguments based on less-than-100-percent success raise one of the perennial problems in fee awards. Plaintiff's fee request indicated that he had already eliminated substantial attorney time from his request, and the district court could reasonably find that all of the theories that were pursued were so interrelated as to make further reductions inappropriate.

Also, as Judge Easterbrook has written, "Blind alleys are an ordinary part of litigation … ." *Bohen v. City of East Chicago*, 666 F. Supp. 154, 158 (N.D. Ind. 1987) (Easterbrook, J., sitting by designation) (allowing fees for time spent with an expert witness who was not called and for time discussing case with several others). Plaintiff raised multiple theories but ultimately won complete success against Lavelo. (At least to the extent that the judgment against Lavelo is collectible. The district court docket reflects extensive post-judgment litigation to collect the judgment.) Given the deferential standard of review, the difficulty in drawing sharp lines, the broad language of the purchase agreement's fee-shifting provision, the interrelated nature of all of plaintiff's theories, and his complete relief against Lavelo, we find no abuse of discretion in the fee award.

Lavelo does not challenge the specifics of Abellan's attorneys' hours expended or hourly rates. The overall fee award is approximately half the damages award, a ratio Illinois tolerates. See *Timan*, 972 N.E.2d at 750, 753. The district court did not abuse its discretion in awarding Abellan attorney fees.

*Conclusion*

We have presented the facts here in the light most favorable to the jury's verdict. The defense had evidence that supported its view of the case, as well. The case was tried well by counsel from both sides before a capable and experienced trial judge. After a fair trial, a jury rendered a reasonable verdict. As Judge Mihm said after the trial, the case was decided by people from the community with no ax to grind after listening to the evidence, the argument, and the instruction and he added: "It doesn't get any better than that, as far as I'm concerned." The judgment of the district court is AFFIRMED.